Case No. 14-4223-14-4278, Broad Street Energy Company v. Devils of Iowa LLC, Mark Vander Laan for Endeavor Ohio LLC in this matter. I would like to reserve three minutes if possible. Having heard the first two arguments, I realized that we have perhaps a more mundane, albeit important issue, and that is the interpretation of contracts under Ohio law. And the key here to the appeal is the plain language of the purchase and sale agreement involved in this underlying matter. This was a contract originally for the purchase of over 10,000 acres of oil properties in eastern Ohio with a purchase price of $35 million. $3,500,000 was put up as escrow money, and for the most part, that's what this case involves, is the fight over the escrow. So just to give you one thought about the language, so you look at Article 10, right? That's, I think, the key provision your client's invoking. For termination, correct. Right, and I get the notwithstanding. In fact, it's nice you've got two notwithstanding clauses. In fact, one referring to Article 4. But the other thing that I think gives me pause about your position is that 10.1b, you know, it's clear that 30% of the unadjusted purchase price, that's fine. That's easy to figure out, and you could see why unilaterally either side might have this right. But then it talks about title defect values. It capitalizes the first letter of each word, and, you know, that's a defined phrase. I mean, that's a defined phrase in Section 4, and then Section 4.2 tells you exactly how that works. And so I think what the notwithstanding means, or at least it's my first reaction, is what it does is it takes away the rest of Section 4, which tells you how to change the purchase price. In other words, 4.2 says we've got this fight over title defects and their value. We exchange information. If need be, we arbitrate. And then we settle upon a title defect value, and Section 4 tells you what you can do with that to the purchase price. But then if it makes one side or the other unhappy, then they can each unilaterally exit. So that's how the notwithstanding clause is still given meaning. But I'm really struggling with the idea that you wouldn't have to look at Section 4 to figure out what title defect values mean. So that's what I'm struggling with. Well, talking about what title defect values mean, or even, as we say, how the issue is ultimately resolved, i.e. through arbitration under 4.6, doesn't answer the question. It does not mean, then, that you have to incorporate into Section 10.1b the timing requirements that are set forth in Article 4. If that were the case, then, as you point out, the essential double of red flags that we have here in the contract about notwithstanding anything to the contrary in this agreement, and more specifically in 10.1b, by buyer or seller, notwithstanding anything contained in Article 4 to the contrary, in the event the aggregate amount, etc., etc. So going back to Article 4 and looking at how one values aggregate amount is one thing. But that does not impose, then, the 30-day limitation rule that is also incorporated in 4.2. Why? What's the problem with incorporating that? Because it is totally inconsistent with the notion that a party has the right, according to Article 10, to terminate at any time from the commencement of the agreement until literally the day before closing. When we parse the language, events of termination in 10.1, at any time commencing on the date hereof and ending upon the occurrence of the closing, and notwithstanding anything else that's in the agreement. So basically what you've done is... What would happen, then, under your view, that one side can announce title defect values that cost more or amount to more than 30% of the purchase price? What would have prohibited Broad Street from saying, well, you have your estimate, we have ours. Our estimate is it's 23.5% of the purchase price. I don't understand why one side over the other would unilaterally be authorized to announce what the title defect values are and that they're over or under 30%. Doesn't that seem strange? No. Because it gives both sides the... I mean, Section 10 gives both sides the right. Because it's such a major transaction, it gives both sides the right to make that assessment all the way up to closing. So if 30 days... Make it unilaterally. Yes. No, not unilaterally. Not unilaterally because if there is a disagreement about it, there is a mechanism to value the title defects, and that's found in 4.6, which goes to AAA arbitration. 4.2 also includes a method for figuring out what are the title, what is a title defect, and then how to value it, right? I mean, it's not just 4.6 that tells you that. Well, 4.6 is the mechanism as to how one actually... I mean, if you're going to have a dispute over title defect values, obviously the only way it's going to be resolved would be by resort to a third-party decision maker, in this case AAA. May I ask, is title claim date, that too is given all caps as if it's a term of art, when is the title claim date? Is that the same as the closing date? Title claim date is in 4.2. That's the 30 days prior, isn't it? That's the 30 days prior. So that's July 8th in this circumstance. Well, we say it's July 9th. Okay, but that's where the dispute is. The math says July 8th. If you take over the Sunday, then you get July 9th. Is that right? Well, you can also count back, and the 30th day could fall on July 9th. Indeed, their own president acknowledged that that was another way to look at it. You have counting rules, and Judge Sutton is the expert on how the rules count. Well, we'll get to that in a minute. Because if our interpretation, which we believe is correct, that 10.1 trumps 4.2 in terms of the timing, not everything else, not everything else, but in terms of the timing, then one need not get as far as the next issue in terms of the 30 days. And our position is that if each party has a right to terminate, actually terminate, not negotiate, but terminate at any time from beginning until closing, that it means what it says. So the anytime I have to acknowledge is a good point for you, but you had acknowledged that some part of Article IV applies. So how should this have played out if there were a dispute between the two parties about what the amount of the title defect values was? So I know what did happen. What should have happened under your interpretation of Article X and Article IV? Under my interpretation. With a disagreement about what the title defect values were and whether they were under or over 30%. What should have happened? That should have then gone, I believe, to the dispute resolution mechanism set forth in 4.6. But that's not what your client saw. Your client just automatically terminated. Well, we believe, yeah. But remember, this trial only dealt with part of the issues. No, I'm just saying how you're interpreting it is not what the client did. Here's what the record shows. The record shows that our client terminated. The other side did not accept the termination. They did not negotiate over any title issues. They sought to enforce closing. I mean, you know, they wrote back. There wasn't a lot of responses. I mean, I don't think you can say they stopped communicating. Well, they said, we don't acknowledge any of your title defects. I think that's... Well, right, but that's what 4.2 would allow. It would allow them to say we disagree, and then it sets up a process for dealing with that.  We said the first thing that should be done here is let's go to arbitration to determine the values to see if the thresholds have been met. The court didn't want to do that. The court instead said... Well, but that's by the time you got to court. I guess I would have thought your position would have been that once you said we terminate, if they say, no, you shouldn't, that they should have invoked arbitration right then because they disagree over a fact. We both went to AAA. Before the lawsuit was filed? I believe it was before the lawsuit was filed, yes. And then what happened? Then we got to court. Oh, but what happened? You say you went to the AAA. Why didn't you just stay there? Because they filed their motion for a summary judgment first. The court decided that we're not going to... You know, I'm trying to remember. I can't remember whether it was before or after, but we were there. Technically, we're still there. But remember, AAA is only to determine what the values would be, and then that would determine whether or not determination is right. The court preempted that by its own determination, its own interpretation of the contract as a matter of law, that, well, sorry, you don't get there because there's an issue first as to whether or not you made a timely showing or a timely effort under Rule 4.2 within 30 days. Let's say the way it works is you, Article 10 is notwithstanding Article 4, you have to allow up 4.1 because that defines title defect values. For the sake of argument, let's say initially 4.2 is out of the mix. But then even if you keep in all of 4.6, 4.6 begins by, I don't know how you can say that's not picking up part of 4.2 when it talks about the parties initially trying to resolve all disputes through good faith negotiations. Isn't that where 4.2 tells you how to do that? Well, it was clear at this point that there was going to be no further negotiations. No, I'm now not talking about what actually happened. I'm now just talking about making sense of all of the contract. So your position is 4.6 is relevant to Article 10, and I'm just telling you the first sentence of 4.6 talks about, it says the parties will attempt to initially resolve all disputes regarding title defect values through good faith negotiations. Isn't some of the instruction as to how to do that found elsewhere in Article 4, including in 4.2? I'm not making myself clear, obviously, because I'm not saying that all of Article 4 is to be read out of this. Okay, so is some of 4.2 read into it? Some would be like that because the issue is, what I'm reading out of 4.2 is the time requirement because the time requirement is inconsistent with the time that 10.1 is set up as title defect. So how can 4.6 apply to a dispute about title defects if there's no timely notice? It can determine whether or not the title defects ultimately are in excess of 30%. Well, it says in order to assert a title defect, blah, blah, blah, 4.6 says a dispute about title defects. So if you didn't file it timely, how could 4.6 have anything to apply to? That would render totally ineffective that part of 10.1 that says one can invoke this at any time before closing. So from the title defect notice date, let's assume one is, okay, I've found some title defects. And then two weeks later, you say, wait a minute, we have found far more wrong with this. Okay. So therefore, we can – You've got the point. Okay. You know, can I just – I'm sorry if I could just do one thing because I think the at any time is a really good point. I mean, that's the thing that's given me the most pause. I mean, so that's at the preamble of all of Article 10, right? Correct. So the reason you would – I think it was right to include that, but it doesn't necessarily control 10.1b is remember that part of Article 10 deals with acts of God and other just – I mean, so the day the – the minute the ink dries, something just terrible happens. True. The at any time has to account for that. It doesn't necessarily mean it controls 10.1b. Well, except then you go to 10.1b and it says, notwithstanding anything contained in Article 4, simply to emphasize, let's – Yeah, but I gave you a thought on that because 10.2 says what to do with title defect values, reduce the price, and that makes – I appreciate the thought. I don't – I don't agree with it. Yes. Yeah. If I – I know my time's up. Even if – even if the court is right on that, our position clearly is that no matter what, the delivery of the defect notices on the 9th complies materially with the contract. And if one needs further proof of it, all one needs to do is look at the cross-examination of their president and CEO, Jeff Arthur, where he acknowledges that it made no difference to him. Okay. Thank you, counsel. Thank you. Your time for rebuttal. Good morning, and may it please the court. I'd like to respond to Judge Sutton's scenario as how the contract should properly be read because I do think it very easily is read so all the pieces do fit together, and that's the process that should have been followed here. But let me point out, just so we don't lose point or lose this very important fact, remember this – we're here on an appeal from a jury verdict. It was the jury who was assigned the job to read the contract, to interpret the contract based upon its reading and also the evidence it heard. So what we're talking about here, the critical issue for this court, is whether there was an abuse of discretion when the trial judge denied the motion for a new trial. We would submit that it's not really a question of de novo review of the contract, although review of the contract is important. The question is, was it reasonable for the jury to read the contract such that it found that Endeavor breached and Broad Street did not? And to address your questions, Your Honor, the two sections read together perfectly, we think, because when you're looking at the termination provisions, it is at a point where there has to be a prior determination of what are the title defect values. And the only way you can determine whether there is a title defect or a title defect value is by going through the process that was set out in the contract. You don't know if you have a title defect until there's notice given that there's a title defect. Endeavor would give an estimate, that's what 4.2 says, gives an estimate of how they're estimating the title defect value, and then there's this whole process of negotiation. But what's really critical to understand how they fit together, look at 4.2C, which also has the third and very important notwithstanding clause, that says if the title defect is not timely noticed, they are waived, notwithstanding anything else in the contract. So you can never get to the termination provisions in Section 10 unless the process is followed, that there is timely notice of a defect, otherwise they're waived, that Broad Street has the opportunity to evaluate those defects, and then there's reasonable good faith negotiation. That's the only way you can get to that defined term. So their position would have to be, in your view, that they can have title defect values without any non-waived title defects? They can only have title defect values if the title defects have not been waived. I'm saying their position is to the opposite. Certainly. That they can assert title defect values at any time, whether title defects have been presented or not, in accordance with 4. That's their position. That's their position, but that's completely inconsistent with the language in the contract itself, because the contract talks about this process. You know, you made the point it's a jury verdict. What if, you know, it's very strange to me to think it's kind of an abusive discretion type review where the main thing is about the contract. I mean, so we still have the right. I mean, there were summary judgment motions. We still have the right to decide what we think the contract means and whether we think it was sufficiently ambiguous to go to a jury, don't we? No, Your Honor. I don't even think we have the summary judgment issue at this point, because it did go to the jury. The jury never heard Judge Marbley's interpretation of the contract. They were writing on a clean slate. They were told, you're going to have the contract. You decide what the contract means. So the question is whether it's reasonable to assume that the contract has some ambiguity in it and, two, whether the jury's verdict, how they apply the contract, is reasonable. Yeah, I would have thought the way it worked is that if we thought there was ambiguity, we would have to give our normal deference to the jury's resolution of that ambiguity. But it seems strange to me that we're not allowed to read the contract and decide for ourselves whether it should have gone to the jury. That seems funny to me. It's just reasonable interpretations of contracts by juries is not the way I thought anyone would want the legal system to work, including your client. Very unpredictable. It's a very unpredictable way to do things. But that is certainly how it was teed up in this case, Your Honor, and I think it does happen in other cases where contract interpretation issues do go to the jury, and once the jury makes that determination, then the standard is the abuse of discretion, not de novo review. Had it happened that Judge Marbley had instructed the jury, you know, this is how I read the contract, and you must find that they had to comply with Article 4 in order to terminate under Section 10, and if he had instructed them, you know, on his other summary judgment rulings, then we would have de novo review, I think. But he didn't. I mean, if you say now we're going to go back to square one, then you're in essence taking away the jury verdict. Well, yeah. It wouldn't be square one. It would be square 100 or square Z. I mean, we'd say what the contract means, end of story. How do you – Mr. Vandalon didn't get a chance to spend much time in argument about his point that, well, who cares about this first issue? There was a breach from the very beginning because Broad Street in Exhibit A was giving leases to which it didn't have 100 percent ownership, and that allowed for an anticipatory repudiation by itself, regardless of the contract. And again, Your Honor, that's a question that went to the jury, and the jury decided there was no material breach by Broad Street. And Endeavor had ample opportunity to present that argument to the jury. They made the argument in opening statement. There was cross-examination of Mr. Arthur on that point. They certainly argued it strenuously in their closing arguments. The jury instruction was that that was Endeavor's claim, that there had been a material breach of the contract from the beginning when Endeavor represented the working interest. The jury heard all that testimony. They simply didn't agree. They didn't accept Endeavor's interpretation that there was a material breach of the contract. And again, that's the jury's verdict, which obviously should be upheld unless there's been an abuse of discretion by the trial court. Endeavor does challenge the summary judgment. They do. They do. So would you still say that wouldn't be something this court could review? Not on that point, no, because again, the jury was instructed. Judge Marbley instructed the jury, you know, this is Endeavor's claim. They claim that there's been a false misrepresentation of working interest by Endeavor, and therefore they claim the deal was breached at the get-go. The jury got that instruction. They got the contract. They heard all the evidence, and they said there was not a material breach. What does that have to do with the summary judgment? The summary judgment's irrelevant at that point. At the trial, it is. At the trial, it is. I think they're challenging, asking us to review. Again, Your Honor, our position is that somehow the jury erases the summary judgment. Because the jury wrote on a clean slate. The jury was never instructed, nor was Endeavor limited in terms of what they could argue to the jury by what Judge Marbley had said in the prior summary judgment motions. The only summary judgment motion we think was really decided as a pure question of law, and that's a standard. You only go back to look at the summary judgment's ruling if the court made a determination as a matter of law and took the issue away from the jury. That didn't happen on those two points. Where it happened was on our cross-appeal when Judge Marbley decided as a matter of law that Broad Street could not pursue its claim for damages. That was a pure question of law. The judge took it away from the jury, and that's why we think that is reviewed. Do you have a citation or your best case that says that when the court finds that there's a genuine issue of fact and sends it to the jury, that an appellate court can't go back and revisit that? That is the general rule. That's the general rule in the Jarrett case. The exception that they're trying to rely on in the Pasco case says when the court has issued, made a determination as a matter of law. Okay, so Jarrett would be your best case. That is the general rule, but you don't go back. Were there post-trial judgment motions filed by Endeavor? There was a motion for a new trial. In any of the post-trial motions, did they argue we should win as a matter of law on the contract? No. In their motion for a new trial, they argued that the jury verdict was against the manifest weight of the evidence. So a new trial is different from JNOV. They didn't argue JNOV in other words? No, they did not. They did not. I started to explain the difference with respect to our cross appeal. There, there was a determination as a matter of law by Judge Marabli that Broad Street would not be able to pursue their claims for damages. We contend that was an error in that summary judgment motion. Ruling is reviewable JNOV. It's a little bit of a high wire act. No, I think it's... Summary judgment motions, but not all of them? But this is why. The general rule is, once it goes to the jury, that what happened in summary judgment prior to that time is not reviewable. The exception is where the trial court has made a determination as a matter of law, a statute of limitations determination, a statute of frauds determination, such that the issue never gets to the jury. That's what happened under cross appeal. So a holding that there is a genuine issue of material fact is a judgment call, not a ruling of law? Is that the position? Genuine issue of material fact, that issue goes to the jury. And that's what happened with respect to the first summary judgment motion. The judge said there was material issues of fact of how you're going to read Article 4. It goes to the jury. They also said there were material issues of fact in the second summary judgment motion as to whether or not there had been a material breach of the contract by Broad Street. Those questions went to the jury. The jury made the decision, and their verdict should be upheld. It's only in the situation where the court takes away the issue from the jury, as they did in Broad Street's request for damages, that it is reviewable. What would the damages have been above and beyond the escrow and the interest? It's a classic breach of contract case. The damages are the difference between the benefit of the bargain and what the property would be worth had there not been a breach. So it's fair market value as of the time of the breach. And that's what we're asking for in this case, Your Honors. First, to affirm, of course, the jury verdict that Broad Street is entitled to the escrow, to affirm that because that was based upon the jury's verdict, based upon the contract, a fair reading of the contract, as well as the evidence presented. And then to send it back to the trial court to allow us to go forward and proceed with a claim for damages for the breach, which has already been determined. In front of a different jury? Pardon me? In front of a different jury, I take it? It would be a different jury, yes. But the question of liability is already determined. They're not going to be happy with that. I don't know if it's a Seventh Amendment problem. It sounds really strange to me. I don't think it would be a Seventh Amendment. I take it part of your argument is not we want these damages so much we'd be willing to start anew with everything? Correct. We are entitled to the jury's verdict as to liability and as to the escrow amount. And, again, if the court does decide that it should go back and review the contract and the whole issue that the jury already decided, again, I would point out as you're looking at the contract what should have happened. First, there was the requirement in the contract that as soon as Endeavor had information that they had determined there were title defects, as soon as possible they were supposed to bring that information forward to Broad Street so there would be the opportunity for that whole process to unwind so that Broad Street could look at the materials, they could negotiate, they could go to arbitration and have a determination of what those title defects values were. And at some point during that process, if either the parties agreed or the arbitrator found that the title defect values exceeded the 30% of the purchase price, both parties would have had the option of walking away and terminating the contract. But Endeavor short-circuited that whole process because when it delivered that notice, it didn't just say here's a notice of title defects, it says we are terminating the contract and demanding that the escrow be paid to us. So it's their termination that really changed. But they didn't do that. They had every right to do that, didn't they? Absolutely not, Your Honor. Why do you say that? That's this unilateral termination based on nothing more than... The fact that they called it termination instead of getting to the 30% of the... Yes, they said we think, we've decided unilaterally that the title defect value is now over 30%. So we are terminating the contract, wrote a letter to the escrow agent saying give us the money back. At that point in time, they repudiated the contract. And at that point in time, it was one day after the title claim date, such that the title defects they were asserting had been waived under Section 4.2c of the contract. Those are defined terms. They are defined terms that created a whole process that was supposed to be undertaken in terms of how this transaction was to proceed to closing. They breached that term. They breached the terms of the contract when they repudiated it by not giving early notice or as soon as possible notice when they thought they had title defect values, delivering them late, and coupling that with this notice that we're just terminating the contract because we think there's title defect value. The question of whether it was as soon as possible, was there evidence about that put to the jury? There was, Your Honor. Endeavor was allowed to present evidence as to why it took them so long to do this. Certainly if timing was an issue, they also had remedies. Under the contract, they could have asked that the closing date be extended, or they could have unilaterally, by paying a sum of money, extended the closing date so that we wouldn't have been in this whole problem where they come in and unilaterally terminate the contract after the fact. Because if they did that, then their notice would be timely because it was 30 days before the new closing date? It still wouldn't have been timely, but I think the character of the case would have been very different had they come forward on July 9th when they were one day late, say, you know, we're really sorry, we know we're one day late, can we agree to extend the closing date so there will be time for you to look at these title defects that we're alleging, or we'll be glad to pay the, I think it was $250,000 to extend the closing date. You know, there might have been a different reaction from Broad Street. Well, but with respect to that latter point, wouldn't, do you have a separate argument that if the closing date is extended, then July 9th would be more than 30 days prior to the new closing date? If it was extended by agreement, sure. Or payment, wouldn't that, it's still a new closing date. I think at that point they would have, because it was the day late, it was July 9th instead of July 8th, they probably could not have unilaterally done it by payment because it was already past the deadline and there was already the waiver of the title defect. Any other questions from the judges? Thank you. Your time has expired. Thank you, Your Honor. We'll have three minutes for rebuttal. Thank you, Your Honor. I will speak rapidly. I mean, the record does not suggest that Endeavor thought that they were late at all in terms of presenting on Monday morning. Indeed, they had sent both, left a voicemail on the 8th and sent an email to Mr. Arthur on the 8th saying we're going to get this stuff, this material to you first thing tomorrow morning. We believe this is the date. Mr. Arthur, in his cross-examination, I think it's critical to look at it and put it in the context of Ohio law on what a material breach is. There is no material breach here. Mr. Arthur acknowledged that, well, he wasn't planning to get anything over the weekend anyway. Nobody was there. It was a holiday weekend. That's the sort of thing that did go to the jury because if all you want is reality, they would have been just as well 29, 28, 27 days probably. And that goes to the whole question of materiality because he said they weren't even equipped to start looking at the title defects that we sent in that next morning. He said, okay, fine. That's normally the case. If you dump, if you send a big dump to somebody on the last appropriate date, they probably wouldn't deal with it for several days. No, he said they weren't even set up to look at it. No, but I just mean in generic. If you can futz with dates in a contract by saying, well, it wasn't so bad, another day, another two, number three, I mean that's not the way contracts are usually interpreted, are they? Well, in this case, if you're looking at the issue of materiality, they certainly are because in this case, how is it one was going to deliver to a closed office on a holiday Sunday where nobody was there, nobody was expecting, and nobody was going to do anything. This is what the jury heard. I know it's what they heard. Same argument, right? Except that the issue before the court is, is that a material breach of the contract? And I'm submitting that as a matter of ---- They were asked that question, as I get it, right? The jury answered that question. Well, they ruled against us. Let's put it that way. They did, and we're saying it's against the manifest way of the evidence. Any other? Sorry, go ahead. You've got a few seconds left. Do you want to hit another point quickly? Yeah. I just want to come back to the notion that if one accepts the opposition's view of the contract, you simply read out of the contract, I believe, the right that we had, they had, to terminate the contract at any point between the time it was entered and the date of closing, that by imposing this title notice date, it basically read out the ability of a party who was the one being victimized by all the title defects to really learn of them and do what the contract required. Okay. Thank you, counsel. Thank you. Case will be submitted.